UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

IN RE:

Julie A. Crowley,   Case No. 09-50169-wsd
   Chapter 7
   Hon. Walter Shapero

       Debtor.
_____/

J. Michael Smith

       Plaintiff,

v.   Adv. Pro. No. 09-05292

Julie A. Crowley,

       Defendant.
_____/

## OPINION DETERMINING DEBT DISCHARGEABLE

In this adversary proceeding, Plaintiff seeks a determination of non-dischargeability under 11 U.S.C. § 523(a)(2)(A) and (B) of a prepetition attorney fee debt owed him by Defendant Debtor. For the reasons set forth in this Opinion, the Court determines that debt to be dischargeable.

### I. Jurisdiction

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and, as such, is within the jurisdiction of this Court pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

### II. Facts and Procedural Background

On April 27, 2004, Defendant Debtor ("Debtor") met with Plaintiff Attorney ("Plaintiff") seeking to engage him to represent her in a divorce proceeding she was

contemplating. On May 14, 2004, they signed a retainer agreement under which she paid Plaintiff $10,000, half of which was a non-refundable minimum fee. Fees were to be calculated on the basis of a specified hourly rate. The agreement included a general provision granting Plaintiff a mortgage or lien on assets, including realty, which Debtor then owned or would be awarded.

The divorce case was commenced and various proceedings ensued. A trial was set for on or about April 18, 2005. By that time, at least as it appears from an invoice (later and first rendered to Debtor by Plaintiff in late 2006), Plaintiff had spent some $39,000 in time on the matter.

At the time of trial, Plaintiff asked (apparently as a condition of proceeding with the trial) that Debtor sign a further document (a) obligating her to pay not less than $27,500 for attorney fees and costs accrued as of the time, plus interest and any additional charges for later services and (b) giving Plaintiff a lien on any of her assets and property to secure payment. That document specifically granted a lien on the marital residence, the legal description of which was included. As of that time, Plaintiff had never rendered any invoice for services, despite the reference to the rendition of monthly billings and procedures for questioning same contained in the initial retainer agreement.

The divorce case was tried on various dates between April 19, 2005 and October 25, 2005. The trial ended with the court awarding judgment for Debtor. The noted 2006 invoice indicates the accrual of some additional $14,675 in time charges during that period. Between October 25, 2005 and March 24, 2006, there were additional proceedings incident to obtaining the actual entry of the divorce judgment on the latter date. Over that period, some $10,325 in additional time charges were accrued.

Relevant to this proceeding, the divorce judgment provided that (1) the marital home was awarded to Debtor, subject to her obligation within 90 days to either refinance that property or otherwise take steps to remove her husband's name from the mortgage obligation covering it; (2) each party was to bear their own attorney fees except that Debtor's husband was to pay Debtor $20,000 as his share of the attorney fees and costs incurred by Debtor (this provision came about, at least in part, in response to an argument by Plaintiff that Debtor was unable to afford the totality of his fees); and (3) the attorneys for the parties were discharged. Nothing was specifically said in the divorce judgment about Plaintiff's aforementioned attorney's lien. Thereafter, in attempting to comply with the divorce judgment and incident to the closing of the refinancing obligation regarding the home, Debtor learned by way of a title insurance search of the recording of Plaintiff's lien on the marital property. That filed lien effectively prevented the refinancing from taking place, largely it appears, because the refinance proceeds (and/or Debtor's own available cash resources) were apparently not sufficient to cover all of the liens (including Plaintiff's) and other obligations required to be paid incident to the refinancing.

The refinancing failure actuated Debtor's former husband to file contempt proceedings against Debtor. Those proceedings in turn, possibly including some prompting from the state court and in response to her former husband's contempt action, led Debtor to assert that Plaintiff's liens were invalid and unenforceable. They also led to proceedings by Plaintiff for a money judgment against Debtor for attorney fees. The results of those proceedings were that the state court, on various grounds, set aside Plaintiff's attorney's liens pursuant to an opinion dated May 17, 2007, and later entered a

consented to order dated March 25, 2009 stating the amount Debtor owed Plaintiff for attorney fees. To date, it appears that Plaintiff has been paid at least $20,000 by Debtor and $22,000 by Debtor's former husband (though the exact amounts are not totally clear, the facts regarding the payments are not relevant to the disposition of what is before the Court).

Debtor filed her bankruptcy case on April 1, 2009. Plaintiff subsequently timely filed this adversary proceeding seeking a determination that the attorney fee obligation owed him by Debtor as non-dischargeable. The Complaint is based upon 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(5), and (a)(15), but Plaintiff has abandoned all but the § 523(a)(2)(A) and (B) claims.

### III. Discussion

As to the § 523(a)(2)(A) and (B) claims, it should first be noted that, as respects statements about a debtor's financial condition, these two sections are mutually exclusive, i.e., a challenge to dischargeability based on a statement regarding a debtor's financial condition may NOT proceed under § 523(a)(2)(A) and can ONLY proceed under § 523(a)(2)(B). The statute says so in so many words. See Armbrustmacher v. Redburn (In re Redburn), 202 B.R. 917, 924 (Bankr. W.D. Mich. 1996).

It is not totally clear what Plaintiff is asserting might be the written statement(s) as to Debtor's financial condition that the statute requires. The only written statements that might even be considered in that category, and indeed the only statements of Debtor that are written at all, are the original retention agreement and the additional lien document given at the time of trial. Neither of these can be considered as statements of Debtor's financial condition, i.e., statements setting forth any specifics, details, or

- 4 -
09-05292-wsd    Doc 30    Filed 11/16/10    Entered 11/16/10 13:24:18    Page 4 of 9

representations respecting Debtor's resources, income, liabilities, or assets as would be encompassed by any reasonable interpretation or definition of "financial condition."  See Cadwell v. Joelson (In re Joelson), 427 F.3d 700, 711-12, 714 (10th Cir. 2005) (citations omitted).  Rather, these documents are fairly characterized as agreements or contractual commitments to pay fees and the granting of liens to collateralize the payment obligation - nothing more and nothing less.  If there be another claimed written document, it would have to be one that came into existence materially after the services were actually performed.  As such and in any event, that document would run afoul of the reliance requirement that is common not only to § 523(a)(2)(B) but also to § 523(a)(2)(A) actions.

What is left is the § 523(a)(2)(A) claim, with respect to which Plaintiff must establish the required elements proving false pretenses, a false representation, or actual fraud by a preponderance of the evidence.  See Grogan, 498 U.S. at 291.  The statute requires a creditor to establish the following:

> (1)  the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
> (2)  the debtor intended to deceive the creditor;
> (3)  the creditor justifiably relied on the false representation; and
> (4)  its reliance was the proximate cause of loss.

Nehasil v. Grenier (In re Grenier), 430 B.R. 446, 452 (E.D. Mich. 2010) (citing Rembert v. AT&T Universal Card Servs., 141 F.3d 277, 280-81 (6th Cir. 1998) (citation and footnote omitted)).  "Actual fraud" under § 523(a)(2) has been held to include not only misrepresentations, but also "any deceit, artifice, trick, or design involving direct or active operation of the mind, used to circumvent and cheat another." Morganroth & Morganroth, P.L.L.C. v. Stollman (In re Stollman), 404 B.R. 244, 257 (Bankr. E.D. Mich. 2009) (Shefferly, C.J.) (citing Mellon Bank, N.A. v. Vitanovich (In re Vitanovich),

259 B.R. 873, 877 (B.A.P. 6th Cir. 2001)), appeal dismissed, 2010 U.S. Dist. LEXIS 26574 ( E.D. Mich. Mar. 22, 2010).

Complaints alleging fraud under § 523(a)(2)(A) must be pled with particularity pursuant to Fed. R. Civ. P. 9 as adopted by Fed. R. Bankr. P. 7009(b). MBNA Am. Bank, N.A. v. Henning (In re Henning), 309 B.R. 508, 515 (Bankr. W.D. Mich. 2004). The purpose of the rule is to provide debtors with an adequate amount of detail of the pending action so that they may begin a competent defense. Grenier, 430 B.R. at 451 (citing United States ex rel. Snapp, Inc. v. Ford Motor Co., 532 F.3d 496, 504 (6th Cir. 2008)). At a minimum, complaints alleging § 523(a) fraud must describe in detail the time, place and content of the misrepresentation. Grenier, 430 B.R. at 451 (citing Ford Motor Co., 532 F.3d at 504). The failure of a creditor to plead fraud with proper particularity is an issue that a court may raise sua sponte. Rogers v. Wesco Props. L.L.C., 2010 U.S. Dist. LEXIS 82523, at *17-18 (D. Ariz. Aug. 3, 2010).

The Complaint alleges, and the proofs confirm, that the primary if not the only factual basis for this claim is that Plaintiff had a contractual relationship with Debtor providing for a lien, which Debtor thereafter had "fraudulently" removed. The Court forgets for the moment the failure of such an allegation to meet the noted procedural specificity and particularity requirements of applicable rules relating to allegations of fraud. Taking into account other facts and arguments adduced at the evidentiary hearing, the sum and substance of Plaintiff's case is that the invalidation by the state court of the liens granted by Plaintiff, when combined with a failure to pay him out of the proceeds of a liquidated retirement account and refinanced mortgage on the residence, should

together persuade the Court that Plaintiff has met his burden of proof as to all of the statutory requirements.

It is hornbook § 523(a)(2)(A) bankruptcy law that the alleged violative conduct must have taken place or exist at the inception of the debt or, in this case, when the services were rendered. See 4 Collier on Bankruptcy P 523.08 (16th ed. 2010). No fraud exists if a commitment is made in good faith and with the intent to pay at the time the promise is made and/or when the services are rendered, even if one later changes one's mind. Id. By way of illustration, the debtor in Bank of Louisiana v. Bercier (In re Bercier), 934 F.2d 689, 690 (5th Cir. 1991), offered a security interest in a $50,000 bond that he held in order to secure a loan from the bank. The debtor eventually failed to repay the loan and subsequently liquidated the bond for his own benefit. Id. The Fifth Circuit denied the bank's § 523(a)(2) motion for nondischargeability, in part, on the basis that the creditor failed to establish that the debtor procured the loan and provided the security interest with statements that the debtor knew at the time were false or with the intention at the time of deceiving the creditor. Id. at 692. The Fifth Circuit went on to explain that

> In order to prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must prove that a debtor knowingly and fraudulently made false representations to the creditor in order to obtain the creditor's money. Subsequent conduct contrary to a former representation by debtor does not necessarily establish the original representation to have been false.

Id. at 692 n.5 (citing In re Boese, 8 Bankr. 660, 662 (Bankr. D.S.D. 1981)).

In the present case, all of the services constituting the debt sought to be discharged were performed prior to there being even any hint that the matter of existence or validity of the attorney's lien was going to become an issue between the parties. While it may be fairly said that Plaintiff may have been relying, at least in part, on the existence

of the lien in continuing to perform services, the record does not support a conclusion that, at the times the services were rendered or indeed for a year or so thereafter, Debtor had or harbored any objectively expressed or subjectively held intent or desire to contest or seek to invalidate the lien.

That Debtor, at the time of the trial and reiteration of the grant of the lien may have felt put upon by Plaintiff's efforts on the eve of trial to further secure his claimed lien at the risk of his not proceeding with the trial, is neither tantamount to, nor the equivalent of, Debtor having or harboring, then or at a later period during which the remainder of the services were performed, "any deceit, artifice or trick or design involving direct or active operation of the mind used to circumvent and cheat another." The record simply does not support any such conclusion. In providing his services, Plaintiff, as noted, may have been relying, in part or even in whole, on his claimed lien. Nonetheless, his performance of services under his state of mind is not legally traceable to any actionable fraud or misrepresentation on the part of Debtor who had in fact again agreed to the lien.

Plaintiff cannot somehow relate back, for reliance or misrepresentation purposes, the later invalidation of the attorney's lien, which was later brought about by, in part, with the prompting of the court albeit being likewise pursued by Debtor. No matter who initiated or pursued it, the invalidation was incident to later proceedings begun and effectuated after the services at issue were performed and occasioned by circumstances arising after the performance of the services, i.e., Debtor's attempt to refinance her home pursuant to requirements of the divorce judgment and the effect of the existence of the then filed attorney's lien on that process.

In summary, Debtor was a credible witness and the primary objective facts are that (1) following her agreements to do so, Debtor paid substantial sums to Plaintiff to apply on amounts found to be due him for his services (some, if not all, of such payments being made before the issue of the validity of the lien came up); and (2) the issue of the validity of the lien arose after all of the services were performed and only after Debtor was cited for contempt for failing to timely comply with the divorce judgment obligation which was in part occasioned by the existence of Plaintiff's liens. Debtor's credibility coupled with those facts and the remainder of the record, belie the existence of any false pretense, false representation, or scheme, artifice, intention or state of mind at the time or times that are relevant to the inquiry that would meet or sustain Plaintiff's burden of proof.

## V. Conclusion

For the reasons stated in this Opinion, the Court finds that the subject debt is dischargeable. Debtor shall submit an appropriate order.

.

**Signed on November 16, 2010**

                                              **/s/ Walter Shapero**
                                    **Walter Shapero**
                                    **United States Bankruptcy Judge**